UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **STAPHON F. MOORE et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | 2:24-cv-1338-EGL |
| ) | |
| **U.S. BANK N.A.,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

On August 29, 2024, Plaintiffs Staphon and Elizabeth Moore sued Defendant U.S. Bank N.A., as Trustee for Residential Assets Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EMX2. Doc. 1-1. On September 30, 2024, U.S. Bank removed the action to this Court. Doc. 1. U.S. Bank now moves for summary judgment. Doc. 20. For the reasons below, the motion is **GRANTED.**

## BACKGROUND

On December 19, 2005, Plaintiffs executed a promissory note and mortgage loan for $43,400, secured by their home. Doc. 24 at ¶2; Doc. 19-1 at ¶¶5-6; Doc. 19-2. At some point thereafter, the loan entered a period of apparent dormancy, during which Plaintiffs did not receive monthly mortgage statements. Doc. 24 at ¶3.

On September 19, 2011, the mortgage was assigned to U.S. Bank. Doc. 19-1 at ¶7. This assignment was recorded on September 23, 2011, in the Office of the

Probate Judge of Jefferson County, Alabama, as document number 20110923000921610. *Id.*; *see also* Doc. 19-4.

On November 1, 2023, PHH Mortgage Services began servicing Plaintiffs' loan. Doc. 19-1 at ¶8; *see also* Doc. 19-5. Mortgage statements resumed on November 8, 2023. Doc. 19-1 at ¶9. Those statements informed Plaintiffs of the amount then due on the loan, including interest: $82,033.86. *See* Doc. 19-6 at 2.

On May 3, 2024, PHH sent Plaintiffs a Notice of Default via first-class mail stating that they had failed to make one-hundred and twenty-three monthly payments and therefore were in breach of the mortgage agreement. Doc. 19-1 at ¶10; *see* Doc. 19-7 at 3. Plaintiffs deny receipt of this notice. Doc. 24 at ¶4. On June 20, 2024, PHH issued a Notice of Acceleration for the full unpaid balance. Doc. 19-1 at ¶11; *see also* Doc. 19-8.

On August 29, 2024, Plaintiffs filed this action seeking to prevent foreclosure and to challenge U.S. Bank's enforcement of the mortgage. Doc. 1-1. They allege that the loan balance was improperly calculated, that required notices were defective, and that nothing was actually owed to U.S. Bank. *Id.* at ¶¶13, 15-16, 20-25, 27. On September 30, 2024, U.S. Bank removed the case to this Court. *See* Doc. 1.

Around October 28, 2024, Plaintiffs paid the full amount PHH asserted was owed, $101,681.52, and sold the property. Doc. 24 at ¶6; Doc. 19-1 at ¶12; *see also* Doc. 19-9.

2

U.S. Bank now seeks summary judgment, arguing that Plaintiffs' claims are moot and that it is therefore entitled to judgment as a matter of law. *See generally* Doc. 20.

## STANDARD

Summary judgment is appropriate when the facts properly supported by the record and taken in the light most favorable to the non-movant "show[] that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The movant bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). The moving party may discharge its burden by merely "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Id.* at 325. In determining whether the moving party has met this burden, the district court must view the evidence and all

factual inferences in the light most favorable to the party opposing the motion. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the movant has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the record as a whole could not lead a rational trier of fact to find for the nonmoving party, then there is no genuine dispute for trial. *Id.* All reasonable doubts, however, are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

## DISCUSSION

U.S. Bank moves for summary judgment, arguing that it is entitled to judgment as a matter of law on the declaratory judgment claim, and that Plaintiffs' quiet-title claim has been rendered moot. Doc. 20 at 5-9. Plaintiffs argue that a genuine and material dispute of fact exists over the calculation of the amount owed, and over whether U.S. Bank complied with the mortgage's notice requirements. Doc. 25 at 7-17. These arguments are considered in turn.[1]

---

[1] A substantial portion of Plaintiffs' briefing is dedicated to whether payment of the loan bars their claims against U.S. Bank. Doc. 25 at 10-12. The Non-Waiver Agreement (Doc. 24-1) sufficiently demonstrates that Plaintiffs did not waive their claims by paying off the mortgage. Another substantial portion of Plaintiffs' briefing is dedicated to "economic duress." Doc. 25 at 9-10. These arguments are irrelevant to the pending motion because "economic duress" is simply an affirmative defense to contract enforcement. *See Edwards v. Kia Motors America, Inc.*, 2006 WL 4738660, at *7 (N.D. Ala., May 18, 2006).

I.   **Declaratory Judgment**

U.S. Bank argues that it held a validly assigned mortgage, that it properly calculated the amount owed under the mortgage, and that it complied with the mortgage's requirements for acceleration. Doc. 20 at 4-7. Alternatively, it argues that the declaratory judgment claim has been rendered moot. *Id.*

Plaintiffs' payment of the debt and sale of the property has certainly rendered their request for an injunction to prevent foreclosure moot. *See* Doc. 24 at ¶6; Doc. 1-1 at 11; Doc. 25 at 8 (admitting that sale and payoff mooted foreclosure injunction); *cf. Crespo v. Coldwell Banker Mortg.*, 599 F. App'x 868, 874 (11th Cir. 2014) (holding that request for injunction to prevent foreclosure was rendered moot by sale of the property). And Mortgage Electronic Registration Systems, Inc. clearly assigned the mortgage to U.S. Bank on September 19, 2011. *See* Doc. 19-1 at ¶7; Doc. 19-4. This assignment was recorded the same day, and Plaintiffs raise no argument or evidence questioning its validity. Doc. 19-4; *see generally* Docs. 24, 25.[2]

---

[2] Plaintiffs initially contested the validity of the assignment, Doc. 1-1 at 11, but have since failed to raise the argument in their summary-judgment briefing. *See Schwarz v. Bd. of Supervisors on behalf of Villages Cmty. Dev. Districts*, 672 F. App'x 981, 983 (11th Cir. 2017) (affirming a district court's finding that plaintiffs had waived any challenge to the defendant's motion for summary judgment on certain grounds which the plaintiffs did not address in their response to the motion for summary judgment).

But Plaintiffs contest two points: (1) whether the amount owed was properly calculated; and (2) whether U.S. Bank provided notice of default and acceleration in compliance with the mortgage terms.

### A. Amount Due on Mortgage

U.S. Bank argues that it has produced sufficient evidence to demonstrate the accuracy of the amount it alleges was owed on the mortgage. Doc. 28 at 7-8. Plaintiffs dispute this on two grounds, one legal and one factual. Their legal argument is that the Court should equitably waive all interest owed on the loan because the previous servicer failed to provide monthly mortgage statements. Doc. 25 at 12-14, 17-20. And their more modest factual argument is that, even if they still owe interest, conflicting amounts of what they owe appear in various mortgage statements, which means U.S. Bank has not proved what Plaintiffs owed. *Id.* Both arguments fail.

**1.** Plaintiffs ask the Court to equitably estop U.S. Bank from collecting interest and fees based on its alleged failure to provide regular mortgage statements, as required by the law and the terms of the mortgage. *See* Doc. 25 at 18-20. Plaintiffs cite little authority for their sweeping request. They rely primarily on *Williams v. FNBC Acceptance Corp.*, which applied equitable principles in the Truth in Lending

6

Act context to fashion remedies for violations of the statute. 419 So. 2d 1363, 1367-68 (Ala. 1982).

Plaintiffs' theory is that U.S. Bank unjustly profited from allegedly violating the Truth in Lending Act, and that prohibiting the accrual of interest and fees during the period without statements would advance the statute's consumer-protection purpose. Doc. 25 at 18-20. But periodic mortgage statements are not so essential as to condition the accrual of interest and fees on their being provided. *See generally* Doc. 19-3 at 3-5; Doc. 24-4 at 3-5 (outlining obligation to make payments under the mortgage, including interest and fees). The applicable interest rate is set by the mortgage agreement, and Plaintiffs were thereby informed of that rate, including potential variations. Doc. 24-4 at 21-23.[3] Periodic statements serve to help borrowers monitor the status of their loan, but their absence does not eliminate a borrower's ability to track the debt.

Nor is there evidence that would justify the extraordinary remedy of equitable estoppel. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (stating that estoppel is to be "applied sparingly"). There is no evidence that U.S. Bank represented to Plaintiffs that interest or fees would be waived if statements were not sent. *See Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S.

---

[3] The original interest rate under the mortgage appears to have been 9.15%. *See* Doc. 24-4 at 21. Neither party accounts for the discrepancy between this rate and the 6% that ultimately appears on resumed mortgage statements. *Compare id.*, *with* Doc. 24-2 at 1.

51, 59 (1984) (outlining the elements of estoppel including detrimental reliance on misrepresentation). And, critically, Plaintiffs do not approach with clean hands. *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 241, 245 (1933) ("He who comes into equity must come with clean hands."). The record reflects not only U.S. Bank's lapses in the provision of mortgage statements, but also Plaintiffs' failure to satisfy their independent obligation to make monthly payments. *See* Doc. 24-4 at 27 (indicating 126 missed monthly payments). And it appears to have been over a decade since the mortgage statements ceased. *See id.* (suggesting last payment was made in 2014). All the while, Plaintiffs appear to have sat on their rights, failing to request statements or to pursue an action under 15 U.S.C. § 1640(a), which includes remedies for failure to comply with the mortgage disclosure requirements. *See* Doc. 24 at ¶3 (stating that the loan was dormant "[f]or years" without receipt of monthly statements).

Adopting Plaintiffs' proposal of waiving all interest and fees accrued during the period in which statements were not sent would also create perverse incentives. Borrowers would have little incentive to continue making payments once they notice that mortgage statements have stalled, as they would be secure in the knowledge that the loan had effectively been frozen. Equity does not reward a borrower's failure to satisfy his contractual obligations. *Keystone Driller Co.*, 290 U.S. at 241, 245. Nor should it impose a punitive forfeiture on a lender for a disclosure violation untethered

to the borrower's own obligations. *Bangor Punta Operations, Inc. v. Bangor & Aroostook R. Co.*, 417 U.S. 703, 717 n.14 ("It is not the function of courts of equity to administer punishment."). Imposing such a waiver would effectively punish the lender while relieving the borrower of the duty to pay he voluntarily assumed by taking on the debt. *Cf. Gen. Elec. Credit Corp. v. Strickland Div. of Rebel Lumber Co.*, 437 So. 2d 1240, 1244 (Ala. 1983) ("[W]e reject the notion that a creditor who, in order to assist the debtor and enhance the likelihood of repayment, fails to declare the debtor to be in default at the first available opportunity waives his lien on the debtor's property."). Accordingly, the Court declines to estop U.S. Bank from claiming the interest or fees that have accrued during the period in which statements were not sent.

**2.** That leaves the question of whether there is a genuine dispute of material fact regarding whether the Moores overpaid U.S. Bank. U.S. Bank contends that it has provided a breakdown demonstrating the amount owed. *See* Doc. 28 at 7-8 (citing Doc. 19-9). The breakdown is based on business records maintained by the bank's loan servicer, PHH, the accuracy of which PHH relies on to conduct its day-to-day activities. Doc. 19-1 ¶3. U.S. Bank ultimately asserts that the total amount owed was $101,681.52. Doc. 19-9 at 3. It attributes that figure to $36,870.35 in principal, $24,426.59 in interest, $37,476.09 in negative escrow (including an

9

"Impound Overdraft"), $13.53 in unpaid late charges, $2,878.96 in recoverable balance, and a $16.00 recording fee. *Id.*

Plaintiffs, however, raise some doubt about the accuracy of that total by identifying materially divergent accountings of the amount due. For example, a Wells Fargo statement from October 16, 2023, showed that $67,499.75 was required to bring the loan current, including a negative escrow balance of $36,334.09, unapplied funds of $37.18, and unpaid principal of $36,870.35. Doc. 24-2 at 1. Less than a month later, on November 8, 2023, a PHH statement listed $82,033.86 as the amount needed to bring the loan current, with an identical negative escrow balance. *Id.* Plaintiffs also describe a December 18, 2023, PHH statement showing a past-due amount of $68,340.51 and a total amount due of $69,171.27 to bring the loan current, though this statement is not in evidence. Doc. 25 at ¶24. On May 16, 2024, a PHH statement listed $72,484.34 to bring the loan current. Doc. 24-2 at 7. On June 20, 2024, the foreclosure statement sought a full payoff of $96,478.73. Doc. 19-8 at 2-4. On October 9, 2024, the payoff quote demanded $101,650.24. Doc 24-1 at 6-7. And on October 25, 2024, another payoff quote demanded $101,681.52. Doc. 19-9 at 2-3.

Although these figures vary, they remain consistent in certain respects, including the principal balance of $36,870.35, a negative escrow balance of at least $34,185.09, and accrued interest of $24,426.59. *See* Doc. 24-2 at 1, 7; Doc. 24-1 at

10

6-7; Doc. 19-6 at 6-10; Doc. 19-9 at 2-3. Together, those amounts total at least $95,482.03, leaving a difference of $6,199.49 when compared to the October 25, 2024, payoff quote. *Compare id.*, *with* Doc. 19-9 at 2-3.

This difference appears attributable to changes in the escrow balance, unpaid late charges, the "Recoverable Balance," and the "Recording Fee." *See* Doc. 19-9 at 2-3. The January 16, 2024 statement reflected a negative escrow balance of $34,185.09, while the October 25, 2024 PHH payoff quote reflected a negative escrow balance of $37,476.09, resulting in a difference of $3,291. *Compare* Doc. 19-6 at 10, *with* Doc. 19-9 at 2-3. The unpaid late charges of $13.53, the "Recoverable Balance" of $2,878.96, and the "Recording Fee" of $16.00 together total $2,908.49. When added to the escrow difference, those amounts equal $6,199.49, accounting for the gap between the earlier statements and the October 25, 2024, payoff figure.

Accordingly, summary judgment is, at the very least, indisputably warranted in part in U.S. Bank's favor as to a substantial portion of the amount owed. All the documents the Moores point to still show that they owed at least $95,482.03.

But even as to the remaining sum, summary judgment is warranted in U.S. Bank's favor because it is ultimately Plaintiffs' burden to demonstrate their entitlement to some amount of what they ultimately paid to U.S. Bank. *Cf. Sidel v. Elyton Land Co.*, 10 So. 439 (Ala. 1892) ("The burden is on the plaintiff to show

that she is entitled to the money; it is not sufficient to show that defendant has no right to keep it."). Though it is the movant's burden to show the absence of a genuine dispute of a material fact, that burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.

At this stage, Plaintiffs "had to come forward with all of [their] evidence." *Id.* at 326. Having so come forward, it is enough for U.S. Bank to point out that Plaintiffs don't "have the goods." And they don't. Plaintiffs have produced no evidence showing their right to recover something from the amount they paid to U.S. Bank to satisfy their mortgage obligations. They've pointed out variations, that U.S. Bank hasn't accounted for the entire life of the mortgage, and that the original mortgage note had an even higher interest rate (9.15% annually) than what appears on later statements (6.00% annually). But those facts could also be consistent with a world in which the Moores owed U.S. Bank even *more* money. None of the evidence is sufficient to prove Plaintiffs' claim that they paid U.S. Bank too much. And it was their burden to make that showing. The Court must therefore find an absence of any

"genuine dispute as to any material fact" and that U.S. Bank "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### B. Notice of Default and Acceleration

Plaintiffs also dispute the validity of the amount recovered by U.S. Bank, in part, by asserting that the bank failed to comply with the mortgage's requirements for accelerating the loan balance. Doc. 25 at 14-17.

Plaintiffs' mortgage required the lender to provide notice before acceleration. *See* Doc. 19-3 at 14. The mortgage required any such notice to identify the default, state the action required to cure it, provide at least thirty days to cure after the notice is given, and warn that failure to cure may result in acceleration and foreclosure. *Id.* The notice also had to inform the borrower of the right to reinstate after acceleration and the right to challenge the default or acceleration in court. *Id.* The mortgage further required the notice to be written and sent to the borrower's designated notice address by first-class mail or actually delivered to the borrower's notice address if sent by other means. *Id.* at 11.

U.S. Bank, by affidavit, asserts that on May 3, 2024, PHH sent a Notice of Default to Plaintiffs explaining that they had breached the terms of the loan by failing to make the required monthly payments. Doc. 19-1 at ¶10. U.S. Bank also asserts that, on June 20, 2024, PHH sent a Notice of Acceleration to Plaintiffs explaining that they had breached the terms of the loan by failing to make the required monthly

13

payments. *Id.* at ¶11. Both notices are attached as exhibits to U.S. Bank's evidentiary submissions. Docs. 19-7, 19-8. Plaintiff Staphon F. Moore declares by affidavit that he never received the Notice of Default. Doc. 24 at ¶4.

The Notice of Default appears addressed to Staphon and Elizabeth Moore at 13214 SW 21st St., Miramar, Florida 33027-2667. Doc. 19-7 at 2. The notice bears a mark indicating it was "Sent Via First-Class Mail." *Id.* The notice stated that Plaintiffs were in default, identified the actions required to cure, provided a cure deadline of June 7, 2024, and warned that failure to cure could result in acceleration and foreclosure. *Id.* at 2-4. The notice also informed Plaintiffs of the right to reinstate after acceleration and the right to challenge the default or acceleration in court. *Id.*

The law presumes receipt of mail when a party demonstrates that a letter was properly addressed, stamped, and mailed. *See Sullivan v. Eastern Health Sys., Inc.*, 953 So. 2d 355, 360 (Ala. 2006) ("[A] letter properly addressed, stamped, and mailed is presumed to have been received in due course."); *see also Konst v. Fla. E. Coast Ry. Co.*, 71 F.3d 850, 851 (11th Cir. 1996) ("The 'presumption of receipt' arises upon proof that the item was properly addressed, had sufficient postage, and was deposited in the mail."). A bare denial of receipt, without additional evidence, does not rebut that presumption. *In re Farris*, 365 F. App'x 198, 200 (11th Cir. 2010). Plaintiffs offer no evidence beyond Staphon Moore's denial of receipt to show that the Notice of Default was not sent or received. *See generally* Doc. 24. In any event,

the mortgage does not strictly require proof of *receipt* for the notice to be effective; instead, it provides that any notice "shall be deemed to have been given to Borrower when mailed by first class mail." Doc. 19-3 at 11; Doc. 24-4 at 11.

U.S. Bank has offered sufficient proof that it mailed the notice by first-class mail. While the bank does not offer detailed evidence regarding precisely how the envelope containing the notice was stamped, the uncontested evidence from a declarant is that "PHH sent a Notice of Default to the Moores," and the notice itself states it was sent by first-class mail. *See* Doc. 19-1 at ¶10; Doc. 19-7 at 2. Moreover, the Moores do not contest that they received other mail from PHH, *see* Doc. 1-1 at ¶19, which supports the reasonable inference that U.S. Bank's evidence that it "sent" the notice means that it properly mailed it.

Plaintiffs attempt to contest this by stating that U.S. Bank has provided "no proof of proper addressing, sufficient postage, or deposit in the mail, precluding any presumption of receipt." Doc. 24 at ¶11.[4] But the production-shifting framework governing the common-law presumption of receipt does not apply here. That standard creates an inference answering the question of fact as to whether the intended recipient received the mail. It is irrelevant to the question of law as to

---

[4] This appears to be a legal argument couched as an affidavit declaration. *Cf. Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) (holding that "conclusory allegations without specific supporting facts have no probative value" in a response to a motion for summary judgment).

whether notice was provided under the contractual terms. Plaintiffs do not squarely dispute that the notice was sent by first-class mail; indeed, they concede that "[t]he facts imply proper sending of notices." Doc. 25 at 1. They argue only that U.S. Bank's evidence is insufficient to invoke the presumption of receipt under the common law, and that U.S. Bank failed to comply strictly with the mortgage's notice requirements. Doc. 24 at ¶11; Doc. 25 at 14-17. Plaintiffs' arguments regarding the common-law presumption are inapposite for the reasons already explained; their argument regarding strict compliance is unsubstantiated: Plaintiffs point to nothing substantively deficient in the notice U.S. Bank provided, other than the alleged evidentiary deficiencies establishing actual receipt. *See generally* Doc. 25 at 14-17.

Because no genuine dispute of material fact exists regarding U.S. Bank's compliance with the mortgage's requirements for acceleration, summary judgment in U.S. Bank's favor on this issue is warranted.

## II.    Quiet Title

Under Alabama Code § 6-6-540, a quiet-title action may be brought only by a party in peaceable possession who claims ownership of the land and seeks to resolve a dispute over title. *See Lane v. Bayview Loan Servicing, LLC*, No. 2:18-cv-1352-RDP, 2018 WL 6446643, at *6 (N.D. Ala. Dec. 10, 2018). The purpose of such an action is "not to invest the court with jurisdiction to sell or dispose of the title to the land, but merely to determine and settle [title] as between the [plaintiff] and the

16

defendant[]." *Woodland Grove Baptist Church v. Woodland Grove Community Cemetery Assoc., Inc.*, 947 So. 2d 1031, 1036 (Ala. 2006). "In an action to quiet title, the appropriate test is to determine which among the parties claiming right of title and possession holds superior title." *Gardner v. Key*, 594 So. 2d 43, 44 (Ala. 1991).

Plaintiffs sold the property and have no remaining interest in it. And because the mortgage was satisfied, U.S. Bank asserts no interest either. Since no one "among the parties claim[s] right of title and possession," *id.*, the quiet-title action is rendered moot—neither party holds superior title, or, for that matter, any title. Further, Plaintiffs do not raise any argument for maintaining quiet title in their response to the summary-judgment motion. *See generally* Doc. 25. Accordingly, summary judgment on this issue is proper because it has been rendered moot.

## CONCLUSION

U.S. Bank's Motion for Summary Judgment (Doc. 20) is **GRANTED**. The sale of the property and payment of the alleged debt has rendered Plaintiffs' requests for injunctive relief and to quiet-title **MOOT**. Finding no genuine dispute of material fact, the Court **HOLDS** that, as a matter of law, Plaintiffs' mortgage was validly assigned to U.S. Bank, that U.S. Bank validly accelerated the loan in conformity with the mortgage terms, and that U.S. Bank was thereby entitled to at least $95,482.03. The Court also **HOLDS** that, as a matter of law, Plaintiffs have failed to produce evidence that might satisfy their burden of demonstrating entitlement to any portion of the amount they ultimately paid to U.S. Bank beyond $95,482.03.

**DONE** and **ORDERED** this 6th day of March, 2026.

_____
**EDMUND G. LACOUR JR.**
UNITED STATES DISTRICT JUDGE